IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
FILED
November 14, 2005
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| HOLLY A. SANDERS, § § *Plaintiff*, § § v. § § ARGO DATA RESOURCE § CORPORATION, § § *Defendant*. § | Civil Action No. 3:04-CV-02462-R |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant ARGO Data Resource Corporation's Motion for Summary Judgment (filed September 30, 2005). After careful consideration of all parties' submissions, and the law applicable to the issues before the Court, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

Holly A. Sanders ("Plaintiff" or "Sanders") was employed by ARGO Data Resource Corporation ("Defendant" or "ARGO") from June 1985 to August 2004. ARGO is a privately-held technology company specializing in the development of software for banks and other financial institutions. It currently employs approximately 175 employees who are divided into work groups. ARGO hired Sanders to fill a position in its Systems Development group, which is comprised of systems developers performing various tasks such as designing systems, writing code, and fixing errors. Plaintiff was hired as a Software Engineering Specialist ("SES"), a more advanced, non-entry level position. At the time of her hiring, Sanders had a bachelor's degree in

accounting, and work experience in mainframe technology.  She was knowingly an at-will employee throughout her nineteen-year tenure at ARGO.

Sanders received no notice of any poor performance issues from ARGO until February 2004.  ARGO claims, however, that it experienced problems with Sanders's work as early as 1993, and that she was given smaller, less complex projects in 2002 and 2003 as a result.

Some time during the first week of February 2004, Plaintiff was involved in a dispute with two other ARGO employees.  The employees reported to Tom Corbin ("Corbin"), Sanders's direct supervisor, that they had requested, but not received, immediate assistance from Sanders on a time-sensitive customer service issue.  Corbin reported the incident Dave Perkowski ("Perkowsi"), ARGO's Vice President of Systems Development.

As a result of the incident in conjunction with ARGO's alleged ongoing concerns about Sanders's work performance, Sanders received a Personal Productivity Plan ("Plan") on February 12, 2004.  The Plan outlined Sanders's strengths and weaknesses, and placed her on probation for ninety days beginning February 12, 2004, with the stated expectation that she show improvement on her weaknesses during the probationary period.  Shortly after the Plan's issuance, Sanders read a written statement to Corbin stating that the standards set forth by the Plan were discrimination because they were unreasonable and unwarranted.  She refused to sign the plan, and instead proposed resigning and signing a waiver of liability in exchange for a monetary settlement.  Corbin told Sanders that she needed to take up the issue with another employee at ARGO.  Corbin did not mention the statement to anyone else at ARGO, although he did report Sanders's refusal to sign the Plan to Perkowski.  Sanders did not distribute or read the letter to any other ARGO employees.

The probation ended on May 12, 2004. At that time Perkowski met with David Engebos ("Engebos"), ARGO's president and Chief Operating Officer, and two other project managers, not including Corbin. ARGO elected not to discharge Sanders, and instead "gave her the opportunity to prove herself" by placing her in charge of a new project in response to her request for "more leading edge roles." (Def.'s Mot. ¶ 12). On May 27, 2004, Bill Hicks, ARGO's Human Resource Director, received a letter from Sanders's attorney alleging age and gender discrimination against ARGO.

In early June 2004, Sanders was granted the lead implementation role in a project called Version Verification ("Version"). Perkowski was her immediate supervisor on this project. Plaintiff admittedly experienced a number of performance problems on Version. In response to these problems, Perkowski issued a Notice of Disciplinary Action ("NDA") to Sanders on June 23, 2004. The NDA gave specific examples of Sanders's present and past performance issues, and set forth a plan to address them. In July 2004, Perkowski assigned two other Developers to Version task that had originally been assigned to Sanders, as the project had fallen substantially behind under Sanders's direction. On July 7, 2004, Sanders filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging gender and age-based discrimination. ARGO received notice of this claim on July 12, 2004.

In an email dated August 13, 2004, Perkowski responded to an email dated the same day sent by Sanders regarding issues concerning Version. In Sanders's response, she accused Perkowski of "malicious lies," using the word "lies" four times and ending the correspondence with the question "Whose integrity is at issue here?" (Def.'s Mot. at 6).

After a meeting between Perkowski and Engebos, Plaintiff was discharged by ARGO on August 21, 2004. The reasons given for her termination were job performance (the speed of her

work and her ability to manage complex issues) and insubordination (her hostile reaction to criticism). At the time Sanders was fifty-years old. One new Developer, a 57-year old male, has been hired since Sanders's discharge. He was hired almost a year after the termination and performs none of the functions performed by Sanders during her tenure.

On November 16, 2004, Plaintiff filed a Complaint against Defendant alleging gender and age-based discrimination, retaliation, and wrongful discharge pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"); and the Civil Rights Act of 1964 and 1991 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff claims she was placed on probation and eventually terminated, at least in part, because of her age and gender. She claims she was the victim of compensation discrimination while an employee at ARGO. Finally, she claims that Defendant terminated her in retaliation for her allegations of gender and age discrimination in June 2004.

On September 30, 2005, Defendant filed a Motion for Summary Judgment on all of Plaintiff's claims.

## II. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is proper if "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. . ." FED. R. CIV. P. 56(c). An issue is material if it involves a fact that might affect the outcome of a suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). As long as there appears to be some support for the disputed

allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find by a preponderance of the evidence that plaintiff is entitled to a verdict. *Anderson*, 477 U.S. at 249-50. In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A "sufficient showing" consists of more than a scintilla of evidence in support of the moving party's position. *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise an issue as to existence of an essential element).

**B. Time-Barred Claims**

Defendant argues that a number of Plaintiff's claims made at her deposition are time-barred because she didn't file a complaint within 180 or 300 days of the act in question. (*See* Def.'s Mot. at 9). A claimant in Texas must file a discrimination claim with the EEOC within the statutorily mandated 300 days from the time of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e) (2003) (Title VII); 29 U.S.C. § 626(d)(2) (ADEA); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002) (ADEA)*; Byers v. Dallas Morning News*, 209 F.3d 419, 424 (5th Cir. 2000) (Title VII). Plaintiff filed her first EEOC claim on July 7, 2004, and a second on September 24, 2004. (*See* Pl.'s Compl. ¶¶ 3-6).

Therefore, the date for determining timeliness is 300 days prior to July 7, 2004, or September 1, 2003. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (stating that the date of the first filing is that which should be used to discern conduct that may considered in a discrimination case). Any claims concerning adverse employment action prior to this date are time-barred, and ARGO is entitled to summary judgment on each of these claims.

This leaves Plaintiff the following conduct on which she may base her claims: any compensation discrimination after September 1, 2003, her disciplinary probation from February 12, 2004 to May 12, 2004, and her termination on August 31, 2004.


**C. Race and Age Discrimination in Probation and Termination**

Plaintiff rightfully contends that this case should be analyzed under the *McDonnell*

*Douglas* approach.[1]   In an employment discrimination claim, the plaintiff must demonstrate a *prima facie* case of discrimination.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff.  *Id.*  If the defendant meets its burden of production, it falls to the plaintiff to produce other evidence to create "a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  *Id.*[2]

Although "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 90, 143 (2000), the plaintiff need not produce evidence of both pretext *and* actual discriminatory intent to create a fact issue on a discrimination claim.  *Id.* at 148; *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350-51 (5th Cir. 2005).

**1. Prima Facie Case**

To create a prima facie case of discrimination, Plaintiff must show (1) she is a member of

---

[1] Claims of discrimination under Title VII and the ADEA are evaluated within the same analytical framework. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996) (title VII); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (ADEA).

[2] The Fifth Circuit traditionally provided two possible frameworks to analyze discrimination claims, depending on whether the claim was supported with direct or circumstantial evidence. *See generally Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) ("In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both."). Cases involving the latter were analyzed under the *McDonnell Douglas* burden-shifting framework. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Cases involving the former were analyzed under the *Price Waterhouse* mixed-motives approach. *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). Recent Supreme Court and Fifth Circuit rulings, however, have merged the mixed-motive and pretext theories to create the "modified *McDonnell Douglas* approach" used here. *Desert Palace v. Costa*, 539 U.S. 90 (2003); *Rachid*, 376 F.3d at 312.

a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) after her termination, her position was filled by a person outside her protected class. *See Sandstad*, 309 F.3d at 897; *Shackleford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999). In cases involving adverse action other than termination, the fourth prong is met when a plaintiff can show that similarly situated individuals not of the protected class were treated more favorably than the plaintiff. *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

Women and individuals at least forty years of age are members of a protected class. 42 U.S.C. § 2000e (prohibiting discrimination on the basis of sex); 29 U.S.C. 623(a)(1) (prohibiting employment termination on the basis of age); 29 U.S.C. § 631(a) (specifying that individuals over the age of forty are the class protected by this chapter). It is apparently undisputed that Sanders was qualified for her position, and that she was placed on disciplinary probation from February 12, 2004 to May 12, 2004, and terminated on August 31, 2004.

Disciplinary probation is not sufficient to meet the "adverse employment action" prong of a prima facie discrimination claim. The Fifth Circuit has a "strict interpretation of the adverse employment element" of a prima facie discrimination claim. *Pegram v. Honeywell, Inc*., 361 F.3d 272, 282 (5th Cir. 2004). An adverse employment action must be "an ultimate employment decision" such as hiring, firing, demoting, granting leave, and compensating. *Id.* ("An employment action that does 'not affect job duties, compensation, or benefits' is not an adverse employment action.") (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)). The Fifth Circuit has specifically warned against expanding the definition of "adverse employment action" to include disciplinary filings, supervisor reprimands. . . [any actions] that might jeopardize

employment in the future." *Shackleford*, 190 F.3d at 407.[3] As Plaintiff provides no specific evidence as to how her probation period affected her job duties, compensation, or benefits, Defendant is entitled to summary judgment on this claim.

Hence, the issue left for consideration in determining whether Plaintiff has made out a prima facie case of discrimination is whether (1) she was replaced by an individual who was not a member of her protected class, *see Sandstad*, 309 F.3d at 897, or (2) she was treated less favorably than a similarly situated individual who was not a member of her protected class, *see Urbano*, 138 F.3d at 206 .

Defendant asserts that Plaintiff does not meet the fourth prong to prove discriminatory termination because she was not replaced after she was discharged. (*See* Def.'s Mot. at 10). The only developer hired since Plaintiff's departure was a 57-year-old male who came on with ARGO fifty weeks after Plaintiff's termination, and performs none of the functions previously performed by Plaintiff. (*See* Def.'s Mot. at 10). Plaintiff does not dispute this contention, nor does she argue that the hiring of a 57-year-old male developer fifty weeks after her termination was sufficient to meet the fourth prong. Instead, she suggests that she established the fourth prong with testimony showing that she was replaced by Tom Corbin, who was already employed by ARGO at the time of her termination. (*See* Pl.'s Resp. at 9).[4] Defendant counters by asserting that her job duties were assumed by two existing ARGO developers, one male and one female, neither of who was Corbin. (*See* Def.'s Mot. at 7).

---

[3] The Fifth Circuit has held in a unpublished opinion that probation is not an ultimate employment decision for the purposes of a discrimination claim. *Stewart v. Mo. Pac. R.R.,* 121 F. Appx. 558, 561 (5th Cir. 2005) (unpublished).

[4] In addition, Plaintiff provides evidence that in addition to Corbin, Dean Coe and Stephen Chi, both of whom were also men, assisted in assuming her responsibilities after she was terminated. (*See* Pl.'s Resp. at 9). Although Plaintiff also contends that "four young employees" were hired between January and August of 2004, there is no mention of their exact ages, their titles, their salaries, or their job responsibilities. (See Pl.'s Resp. at 11). The Court therefore disregards this assertion as no more than a subjective belief.

MEMORANDUM OPINION AND ORDER - PAGE 9

With respect to Title VII cases, a plaintiff might present evidence that he was terminated while "others who were not members of the protected class remained in similar positions." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (citing *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990); *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 82 (5th Cir. 1995). Here, parties dispute whether a male and female team assumed plaintiff's job responsibilities after she was discharged, or whether a male, or a group of male employees, did so. This contradiction is sufficient to present a genuine issue of material fact that is sufficient to meet the fourth prong of a prima facie case for gender discrimination. *See Bauer*, 169 F.3d at 966; *Meinecke*, 66 F.3d at 82.

Plaintiff also argues that she meets the fourth prong because she provides evidence that she was discharged because of her age. In ADEA and Title VII cases, evidence of disparate treatment may still suggest a discriminatory motive for the purposes of the fourth prong of the prima facie test. *Machinchick*, 398 F.3d at 353 n.26. With respect to ADEA claims, the Fifth Circuit has merely required evidence that plaintiff was "otherwise discharged because of his age." For example, in *Machinchick v. PB Power, Inc.*, the court accepted evidence of an email sent by a supervisor detailing a strategic plan to phase out older employees in order to promote a "21st Century" mindset within the company. 298 F.3d 345, 352-53 (5th Cir. 2005) (stating that this evidence created an inference that [the plaintiff's] age was a factor in his termination). Indirect "stereotyping remarks" are also sufficient to support the inference of discrimination. *Id.* at 353.

Plaintiff claims that she was unfairly singled out by Perkowski during her tenure at ARGO, that she was passed over for project management and training on occasion, and that the probation was her first disciplinary incident prior to her termination and occurred against her

direct supervisor's recommendation. While this activity may constitute evidence that Plaintiff was treated differently, it doesn't show that she was treated differently because of her gender or race to the extent that discriminatory remarks and communication do. When combined, however, with evidence that Plaintiff's job responsibilities after her discharge were assumed by employees not of her protected class, this showing is sufficient to support an inference of discriminatory treatment. *See, e.g., Machinchick*, 398 F.3d at 353 & n.26.[5]

**2. Pretext Burden**

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision to terminate. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that the defendant's reason is either false, or that the plaintiff's protected characteristic was a motivating factor in the employer's decision. *See id.* at 804; *Machinchick,* 398 F.3d at 352; *Rachid*, 376 F.3d at 312.

Defendant offers legitimate, nondiscriminatory reasons for its action. It asserts that, after receiving multiple opportunities in the form of probation periods to improve, Plaintiff was discharged for the declining quality of her work and attitude. (*See* Def.'s Mot. at 11). ARGO claims that it observed work performance problems with Plaintiff as early as 1993, and was continually concerned about the speed of Plaintiff's work and her ability to manage complex issues up until February 2004,[6] as well as what it perceived as her hostile reaction to criticism

---

[5] Plaintiff is not required to garner evidence of a quality such as would convince a jury on the full merits of her claim. All she must show is evidence that creates an issue of material fact that disparate treatment occurred.

[6] ARGO points to a number of observations over the years to support its assertions of concern over Plaintiff's work performance. In 1993, Plaintiff was working on a project called Graphic User Interface ("GUI"). Perkowski, who was the project lead at the time, allegedly noticed that Plaintiff was slow, and that she required more help and supervision than other project employees. (*See* Def.'s Mot. at 3). In 1998, Perkowski, who by then was in charge of the Systems Development group, gave Plaintiff the lead on a project called ADTab. Again, he observed that her work was unusually slow. He also received complaints from multiple customers about the product Plaintiff produced.

when she received her first probation onward.  (*See* Def.'s Mot. at 7).  Perkowski arrived at his termination decision after discussing the issue with Engebos, ARGO's President.  (*See* Def.'s Mot. at 7).  This explanation satisfies the burden of production.[7]

As ARGO provided legitimate, nondiscriminatory reasons for Plaintiff's termination, "the presumption of discrimination created by [Plaintiff's] prima facie case drops form the case, leaving [her] with the ultimate burden of proving intentional discrimination." *Machinchick*, 398 F.3d at 354.  Plaintiff may meet this burden by providing circumstantial evidence sufficient to create a fact issue such that the Defendant's legitimate reason was a pretext for discrimination or that discrimination was a motivating factor in the decision to terminate.  *See McDonnell Douglas,* 411 U.S. at 804; *Rachid*, 376 F.3d at 312.

Plaintiff contends that the reasons Defendant offers were fabricated as a pretext for discrimination.  In the alternative, her age and gender were at least motivating factors in her termination.  Plaintiff offers evidence from deposition testimony that can be divided into five primary bases for asserting that her deteriorating work performance and attitude were a pretext for discrimination, or, at a minimum, that her age and / or gender were at least motivating factors in her termination: (1) she was never "reprimanded, written-up, suspended and / or warned. . . of poor performance issues" prior to her February 2004 probation (*see* Pl.'s Resp. at 2); (2) Corbin gave Plaintiff good work reviews up to mid-summer 2004 (*see* Pl.'s Resp. at 3); (3) Corbin did not support and tried to prevent the issuance of the Plan, the issuance of the NDA, and Plaintiff's eventual termination (*see* Pl.'s Resp. at 3, 10-11); (4) even though Plaintiff was told by

---

Perkowski claims that he continued to assign Plaintiff projects because he felt she was making a genuine effort to improve.  (*See* Def.'s Mot. at 3).  In 2001, he gave her the lead on another project.  Again, Plaintiff's product fell short of the project goals, creating problems with customer satisfaction. Perkowski allegedly changed his strategy at that point, assigning Plaintiff smaller, more manageable products during 2002 and 2003.  (*See* Def.'s Mot. at 4).

[7] This is a burden of production, not a burden of persuasion, and cannot involve a credibility assessment. *Reeves*, 530 U.S. at 142.

Perkowski that she passed the February 2004 probation with her "job intact," he assigned her to the Version Verification project to "set [her] up to fail" (*see* Pl.'s Resp. at 8, 12); (5) there was a "general feeling" of "favoritism" at ARGO (*see* Pl.'s Resp. at 10).

Plaintiff fails to point to specific evidence showing that the reason behind Defendant's decision was that of gender or age discrimination. For example, Plaintiff sets forth no specific evidence of direct or indirect remarks or expressive conduct concerning Plaintiff's age or gender by any of the decision-makers.[8] She presents no pattern or practice of gender or age-based discrimination at ARGO.  Instead, she provides evidence that her employer's assertion were false, or that her work performance and attitude were not deteriorating to a point that mandated termination.  The Supreme Court has stated that "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dessembling to cover up a discriminatory purpose." *Reeves*, 120 S.Ct. at 2108.  "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit a trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 2109.

Plaintiff's evidence, however, does not counter Defendant's arguments, nor does it create conflicts with the substantial evidence to prove falsity.  Plaintiff provides no evidence outside of her own deposition countering the assertion that she completed tasks at a slower rate than her colleagues during her tenure at ARGO.[9]  It is uncontested that Plaintiff got into a dispute with

---

[8] In her deposition testimony, Plaintiff points to a meeting she had with Perkowski to ask him to remove the February 2004 probation from her employment file.  Plaintiff claims that Perkowski refused, said "I have a wife at home in menopause, I don't have time for you," then opened his office door and left. (Pl.'s Resp. at 9).  The Court can think of a number of categories such a remark would fall into - insensitive, unprofessional, dastardly, treacherous - but discriminatory or stereotypical is not one of them.  It does not reference Plaintiff's age or gender, either directly or indirectly.

[9] Although Plaintiff points to Corbin's deposition testimony stating that he disagreed with her probation, he claims he did so becuase he thought she would view it "as an attack" and "he didn't think it would help" - he does not comment on her work performance, and he expressly limits his testimony to the time prior to February 2004, when he was her supervisor.

her team members concerning her refusal to meet with them in February 2004 concerning a customer relations issue, and that Corbin reported this dispute to Perkowski. Plaintiff does not contest her refusal to sign the Personal Productivity Plan preceding her probation, which was meant to elucidate her job expectations and responsibilities.  It is uncontested that Plaintiff's work on the June 2004 Version Verification was below standard  - Plaintiff even admitted as much in her deposition.  Defendant asserts that Plaintiff called Perkowski a "malicious liar" in reaction to job-related criticism she received from him, which she does not contest.  There is no assertion that Defendant strayed from company policy in its treatment of Plaintiff.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224-25 (5th Cir. 2000) (considering this factor in the pretext analysis).[10]

As Plaintiff fails to provide evidence that her age and / or gender were motivating factors in ARGO's decision to terminate, or that ARGO's reasons for terminating her were false, her claim does not give rise to a material fact supporting age or gender discrimination.  The Court must grant summary judgment on this claim.

**D. Compensation Discrimination**

Plaintiff claims that she was discriminatorily paid less than her male counterparts.  Title VII states that it is unlawful "to discriminate against any individual with respect to his compensation. . . because of such individual's sex."  42 U.S.C. § 2000e-2(a); *see also Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983) (stating that a Title VII claim alleges "individual, disparate treatment").  To establish a prima facie case, plaintiff must show that: (1) her  employer was subject to Title VII, (2) she performed work in a position requiring equal

---

[10] Plaintiff contends that Corbin did not support the decision to terminate her, but she offers no evidence showing that he was familiar with the reasons for her termination or the work on her project prior to the termination.

skill, effort, and responsibility as others under similar working conditions, (3) she was paid less than those employees providing the basis of comparison, and (4) the employer acted with discriminatory intent. *See Peters v. City of Shreveport*, 818 F.2d 1148, 1153-54 (5th Cir. 1987).; *Lenihan v. Boeing Co.*, 994 F.Supp. 776, 797 (N.D. Tex. 1998) (stating that plaintiff in a Title VII compensation discrimination case must show discriminatory intent).

After a plaintiff makes out a prima facie case for compensation discrimination, the employer must then articulate a legitimate nondiscriminatory reason for its actions. *See Plemer*, 713 F.2d at 1136. If the employer carries this burden of production, the plaintiff must then prove by a preponderance of the evidence that the proffered reasons are a mere pretext for discrimination. *Id.*

Plaintiff provides evidence that she was paid less than other employees in her work group after September 1, 2003.[11] She fails, however, to provide evidence that she performed work requiring equal skill, effort, and responsibility as those who received higher pay. Although Title VII discrimination-compensation claims are not limited to cases in which the plaintiff can "show that he or she was being paid less than an employee [outside the protected class] for performing. . . substantially equal work," *Plemer*, 713 F.2d at 1131 (citing *County of Washington v. Gunther*, 452 U.S. 161, 101 (1981)), in a case where two relevant jobs are not equal, a plaintiff must produce direct evidence that she would have been paid more if she were not in the protected class. *See id.* at 1133-34. Plaintiff fails to do so - she simply provides no evidence that ARGO based its compensation decisions on age or gender.

Here, Plaintiff's failure to provide (1) evidence to support either an inference that she

---

[11] The only evidence that Plaintiff points to to support her compensation discrimination claim is that five members of her ten-member work group received compensation higher than her own. Of those five, all were younger and one was female. (*See* Pl.'s Resp. at 12).

was receiving less pay for substantially similar work, or (2) direct evidence that she would have been paid more had she not been a member of a protected class is fatal to her prima facie case.[12] Plaintiff's compensation-discrimination claim is therefore insufficient to withstand summary judgment.

**E. Retaliation**

Plaintiff contends that she was discharged in retaliation for filing complaints with the EEOC for age and gender discrimination. To pursue a retaliation claim, a plaintiff must first demonstrate a prima facie case of retaliation. *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005). To establish a prima facie case of retaliation, the plaintiff must show: (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).[13] Once a prima facie case is made, the defendant must demonstrate a legitimate nondiscriminatory reason for the employment action. *Pineda v. United Parcel Serv.*, 360 F.3d 483, 487 (5th Cir. 2004). If the defendant meets this burden, the plaintiff must then show that the offered reason is mere pretext for the retaliatory purpose. *Id.*

Filing a discrimination claim with the EEOC is a protected activity, *see generally, e.g., Shirley v. Chrysler First, Inc.*, 490 F.2d 39 (5th Cir. 1992), and it is undisputed that Plaintiff's termination occurred. The question is whether a causal link exists between the protected activity

---

[12] Even is Plaintiff had established a prima facie case, she presents no evidence to raise a factual issue on whether ARGO's nondiscriminatory explanation for the discrepancy was pretextual. ARGO provides ample evidence, none of which Plaintiff contests, showing that the individuals who received higher pay than Plaintiff had different degrees, higher level responsibilities that Plaintiff did not perform, stronger technical abilities to complete task quickly and independently, higher accountability levels, and more positive "attitudes." (*See* Def.'s Mot. at 14-15).

[13] The anti-retaliation provisions of the ADEA and Title VII are similar and "cases interpreting the latter provision are frequently relied on in interpreting the former." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 n.5 (5th Cir. 1992).

and Plaintiff's termination. To meet this prong, Plaintiff "must offer evidence from which the jury may infer that retaliation, in whole or in part, motivated the decision to terminate." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (citing *Evans v. City of Houston*, 246 F. 3d 344, 355 (5th Cir. 2001); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001)).

Plaintiff claims that the causal connection can be inferred because the adverse action occurred after she filed her EEOC complaint. The Fifth Circuit has "made clear that 'the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Roberson*, 373 F.3d at 655 (citing *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir.)). But here Plaintiff asserts that Defendant had notice of her EEOC claim when it received a letter from her attorney on May 26, 2004 stating her intent to file, and when it received an EEOC notification letter dated July 12, 2004, a month before she was fired. (*See* Pl.'s Resp. at 8). This awareness alone is enough to infer a finding that the decision to terminate and the protected activity "were not wholly unrelated." *Medina*, 238 F.3d at 684 (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)); *see also Evans*, 246 F. 3d at 354 (stating that close timing between an employee's protected activity and the adverse employment action may be sufficient to meet the causal requirement).

The burden of production now shifts to Defendant to articulate a legitimate reason for its termination of Plaintiff. As stated, *supra* Section II.C.2, Defendant asserts that Plaintiff was terminated because of her declining work performance and attitude and supports this assertion with specific examples. This explanation is sufficient to permit a factfinder to conclude that the termination was not motivated by the employee's engagement in the protected activity. *See*

*Medina*, 238 F.3d at 685.

The burden shifts back to the plaintiff to show that the offered reason is mere pretext for the retaliatory purpose. *Id.* Plaintiff must show "a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand the motion for summary judgment." *Id.* at (quoting *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). In addition to the temporal proximity of the EEOC complaint and adverse employment action, Plaintiff also provides evidence of her unblemished work record prior to February 2004, Corbin's objection to her first probation and termination based on his experience as her supervisor, and the deposition testimony of a co-worker who believed that Plaintiff was singled out and that there was an air of "favoritism" in the workplace.

While these showings may not have been enough to show pretext for gender or age discrimination, *supra*, they certainly are sufficient to show pretext for retaliation. In other words, they are sufficient to raise a question of material fact on which reasonable minds could conclude that termination would not have occurred "but for" the protected activity. *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1998). While ARGO claims termination was justified by ongoing problems identified before Plaintiff filed her first EEOC complaint, and even gave her Version Verification to "prove herself," Plaintiff claims that regardless of any previous problems, termination would not have occurred had she never filed the complaint, and that giving her a project that was allegedly beyond her capabilities was a component of the retaliation. Viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that the explanation proffered by Defendant was pretext for retaliation. Summary judgment is precluded on this issue.

## III. CONCLUSION

For the reasons stated above, Defendant is entitled to summary judgment on Plaintiff's claims for gender and age discrimination and compensation discrimination, but not retaliation. Accordingly, the motion for summary judgment is **GRANTED** in part and **DENIED** in part.

**It is so ORDERED.**
**ENTERED: November 14, 2005**

_____
**JERRY BUCHMEYER**
**SENIOR U.S. DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**